FILED

07/28/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0115

DA 24-0115

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 171N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JESSE ALLEN THOMAS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADC 2022-366
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Kelli A. Cummings, KA Cummings, Law, PLLC, Great Falls, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Mary Barry, Deputy
County Attorney, Helena, Montana

Submitted on Briefs: April 8, 2026

Decided:  July 28, 2026

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Jesse Allen Thomas (Thomas) appeals his May 11, 2023 conviction for two counts of felony Sexual Assault, in violation of § 45-5-502(3), MCA, and two counts of felony Sexual Intercourse Without Consent, in violation of § 45-5-503(4), MCA, following a jury trial in the First Judicial District Court, Lewis and Clark County. We affirm.

¶3 In the spring of 2021, Thomas's niece, M.B.G. (born in 2008), disclosed to a family friend two instances of abuse several years earlier when Thomas had touched her genital area. In August 2021, Child Protective Services (CPS) received a report concerning M.B.G. and then relayed the information to law enforcement. Helena Police Department (HPD) initiated an investigation and M.B.G. was interviewed by Paula Samms, a licensed clinical professional counselor. Subsequently, Detective Mclean Peterson interviewed Thomas, who denied the allegations.

¶4 In the spring of 2022, CPS reported to HPD that it had received another report that Thomas had sexually assaulted a different niece, L.T. (born in 2009). When HPD learned about L.T.'s disclosures, the case was transferred to Detective Sean Schoenfelder, who specializes in crimes against children. A forensic interview was conducted with L.T. and Schoenfelder interviewed Thomas. Thomas again denied the allegations. In April 2022, a

2

second forensic interview was conducted with M.G.B, who made statements consistent with her earlier disclosures. Finally, in August 2022, Thomas's daughter T.T. (born in 2008), was interviewed on two occasions and disclosed similar allegations of sexual abuse by Thomas.

¶5 On August 11, 2022, for his conduct involving M.G.B., L.T., and T.T., Thomas was charged with three counts of felony sexual assault; one count, in the alternative, of felony attempted sexual assault; and two counts of sexual intercourse without consent. The Office of the Public Defender (OPD) assigned Suzanne Seburn (Seburn) to represent Thomas, and the District Court set trial for January 9, 2023. Thomas sent multiple letters to the court requesting a bail reduction hearing, a medical furlough, severance of the charges, and a speedy trial. Thomas also sent letters to the court and OPD complaining he had not heard from Seburn. Seburn filed various motions on Thomas's behalf, including requests to reduce bail and for medical furloughs. On October 20, 2022, the court denied Thomas's motion to reduce his bond. Within the next two weeks Seburn filed a notice of trial exhibits and witnesses, a motion to exclude evidence of prior bad acts, and a motion to sever the counts into three separate cases.

¶6 On November 22, 2022, the court set Thomas's final pretrial conference for December 22. The next day, Thomas was assigned a new attorney, Jon Moog (Jon). Jon submitted a second bond request and additional requests for medical furloughs. On November 30, the court denied Thomas's bond request. On December 21, the day before the pretrial conference, Jon filed a motion to continue the jury trial scheduled for January 9, 2023, and was allowed to withdraw as Thomas's counsel based on a conflict that had arisen.

3

A new trial date was set for March 20, 2023. Thomas continued to write letters to the court in which he complained about counsel, requested self-representation, and claimed violations of his right to a speedy trial. On January 3, 2023, Victor Bunitsky (Bunitsky) was assigned to represent Thomas.

¶7 On January 31, 2023, the court denied Thomas's motion to sever the charges. The motion noted Thomas's request for a speedy trial and that the crowded court docket would likely push trial dates further out and thus jeopardize his speedy trial right if the charges were severed. Thomas wrote to the court before his March pretrial conference accusing the State of misconduct and raising again the prejudicial effect of the joinder. Thomas claimed that the HPD and CPS had assured him he would not be charged and that the State had acted in bad faith by combining all the charges into one case. On March 5, 2023, Bunitsky filed an unopposed motion to continue the trial due to the State turning over new evidence that the defense would need to investigate. The new trial was set for May 8, 2023.

¶8 On March 10, 2023, Thomas wrote to the court and claimed he had only seen Bunitsky once and he had not been informed of the change in trial dates. In another letter, Thomas criticized the court for denying his release because he could not prepare or participate in his defense and that he would not give up his right to adequate representation or his right to a speedy trial. On March 31, Thomas wrote to the court again and requested a hearing for a new attorney, alleging there were unresolved complaints and a lack of communication with Bunitsky.

¶9 On April 4, 2023, Bunitsky requested a third continuance claiming the defense investigator was still interviewing witnesses and collecting evidence and Bunitsky needed

4

to file his notice of the defense's expert. The State objected, noting Thomas's repeated requests for a speedy trial, that the court had reserved the week as a special setting for the trial, the court's overloaded docket, and the victims' desire for closure. On April 17, Thomas again wrote to the court reiterating his complaints of prosecutorial misconduct, failure to have a speedy trial, inadequate representation, and that he had not received a response to his request for a new attorney.

¶10 During the pretrial conference on April 19, 2023, the court denied Bunitsky's motion for a third continuance. In response, Bunitsky immediately renewed his motion, arguing his late entry into the case and new evidence produced by his investigator necessitated a continuance. The court denied the request, noting the prior continuances and the congested court docket. Thomas interjected that he was being forced to choose between having adequate representation and a speedy trial yet failed to mention his March 31 hearing request regarding new counsel.

¶11 On May 4, 2023, the court received a letter from Thomas in which he specifically requested a *Gallagher*[1] hearing, alleged ineffective assistance of counsel, and reiterated that he was being forced to choose between adequate representation and his right to a speedy trial. On May 8, 2023, at the start of trial, Bunitsky requested once more that trial be continued. He asserted three months was not enough to adequately prepare for a six-count felony case; he received new evidence from the State three days before trial; and he had no time to file motions regarding the new evidence. Additionally, the State pointed

---

[1] *State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P.3d 817.

out that Thomas had requested a *Gallagher* hearing but believed this was an attempt to delay trial. Thomas explained to the court that he did not know what a *Gallagher* hearing was but thought he would be able to ask "for more time for a continuance" because he had not been able to get all the discovery, videos, audio "or anything." Bunitsky then explained that "[m]y client has asked to request a continuance so he and I can work with our investigator and he can help us get the information we've been looking for." The court determined there were no discovery issues which warranted delaying the trial and then asked if there was anything else. Bunitsky mentioned only Thomas's complaint about getting medication while in jail. The court proceeded with trial.

¶12 Trial lasted four days. On the third day, after the Defense had presented two witnesses, Bunitsky requested a conference outside the presence of the jury. Bunitsky explained that Thomas had expressed criticism about his performance and, because Bunitsky had not asked the questions Thomas had wanted, Thomas told Bunitsky "we're through, I'm not doing anything else with you anymore." Bunitsky explained that he had represented Thomas to the best of his ability and that he always wants his clients to be involved with their case, but he believed Thomas would never be satisfied with his representation. Thomas interjected and attempted to justify his actions, claiming Bunitsky was severely unprepared. He claimed that Bunitsky had not been to see him, had not returned any of his phone calls, did not know the relevant case law, and "doesn't understand what is here, he hasn't had the time to read it, and he definitely didn't have the time to go over it with me." After a brief recess, Bunitsky told the court:

6

> I hate to do this to you, judge, but I move to let Mr. Thomas finish this trial on his own. I'll stand by, but he's given me pages about ethical considerations, and apparently, he's accusing me of not doing my job properly. Let him decide to finish it on his own. All the witnesses are done except he would be the last one if he wants to do it, and he can do it – let him do it.

The court ruled it would not allow Thomas to represent himself and then recessed for the day.

¶13 On May 11, 2023, the last day of trial, the jury convicted Thomas of two counts of sexual assault and two counts of sexual intercourse without consent. The court noted that after verdicts for Counts I and II were read, Thomas voluntarily left the courtroom.

¶14 On June 14, 2023, Bunitsky filed another motion for a *Gallagher* hearing. He explained the OPD would not assign new counsel based on Thomas's allegation that Bunitsky had not communicated with him. On July 19, 2023, the court held a *Gallagher* hearing where Bunitsky suggested that Thomas represent himself during sentencing, "[h]e's not happy with anyone who represents him because he thinks he knows more than everybody." Bunitsky explained he had briefly met with Thomas, who wanted him to file for a new trial. Bunitsky did not believe they had a basis to file the motion but provided Thomas with the information needed to file it himself.

¶15 The District Court remarked, "I've never seen a client try to micromanage their attorney to the extent that you did . . . . It had nothing to do with Mr. Bunitsky's preparation for trial." The court also noted that the facts of the case had not changed since the victims had come forward, and that it had allowed two continuances. The court found that Bunitsky was prepared for trial and declined to replace Bunitsky, explaining that Thomas's

complaints of ineffective assistance of counsel could appropriately be addressed in postconviction proceedings.

¶16　On August 9, 2023, Thomas filed a pro se motion for a new trial and requested a hearing. On August 21, Thomas sent another letter to the court alleging inadequate representation, the court's disregard of his sixth amendment rights, and the resulting miscarriage of justice. Thomas also stated that he would not attend any further proceedings, including the psychosexual evaluation, without a new attorney. On August 23, the OPD appointed Bryan Norcross (Norcross) to represent Thomas through sentencing, and Thomas completed the psychosexual evaluation. The court designated Thomas a level two sex offender and imposed a sentence of a net term of 75 years with 25 years suspended. Thomas now appeals.

¶17　Thomas argues on appeal that the District Court abused its discretion by denying his motion to continue due to its court calendar. Thomas also argues that the court's inquiry into Thomas's complaints about his counsel was inadequate. Finally, Thomas argues that the District Court abused its discretion in denying his motion for a new trial by referencing only its crowded docket.

¶18　A trial court's order denying a motion to continue is reviewed for an abuse of discretion. *State v. Staudenmayer*, 2023 MT 3, ¶ 10, 411 Mont. 167, 523 P.3d 29. A request to substitute counsel is within the sound discretion of the district court, reviewed for an abuse of discretion. *State v. Aguado*, 2017 MT 54, ¶ 8, 387 Mont. 1, 390 P.3d 628; *State v. Cheetham*, 2016 MT 151, ¶ 13, 384 Mont. 1, 373 P.3d 45. A district court

abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *Cheetham*, ¶ 13.

¶19 Section 46-13-202, MCA, provides the applicable framework for handling motions for continuance. However, "[a]ll motions for continuance are addressed to the discretion of the trial court and must be considered in the light of the diligence shown on the part of the movant. This section must be construed to the end that criminal cases are tried with due diligence consonant with the rights of the defendant and the prosecution to a speedy trial." Section 46-13-202(3), MCA.

¶20 Our review of the record makes clear that Bunitsky's request for a continuance was based on vague references to the length of time he had been on the case without specific information provided to the Court about what he needed to become more prepared. Here, Bunitsky was assigned to Thomas's case five months before trial, had already moved for a continuance, and did not indicate why he would not be prepared for trial. The District Court was not presented with any facts of how Thomas's defense would be impaired if he were not granted a continuance.

¶21 Most importantly, however, the District Court was faced with Thomas's barrage of requests for a speedy trial. The court accommodated Thomas's request by setting his case for a special week-long trial setting. The District Court had the unenviable task of dealing with a defendant who incessantly wrote the court while represented by counsel and balancing that defendant's right to a speedy trial against his request for a continuance. On the record before us, we cannot conclude that the District Court abused its discretion in denying Thomas's request for a third continuance.

¶22    The United States Constitution and the Montana Constitution guarantee a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI; Mont. Const. art. II, § 24. The right to effective assistance of counsel does not, however, grant a defendant the right to counsel of his choice. *State v. Dethman*, 2010 MT 268, ¶ 15, 358 Mont. 384, 245 P.3d 30. A defendant may not demand substitute counsel simply because he lacks confidence in, or does not approve of, his counsel; he only has the right to substitute counsel in a few instances. *Cheetham*, ¶ 18 (citing *Dethman*, ¶ 15). When a defendant asks the court for substitute or new counsel, the court must first conduct "an adequate initial inquiry to determine whether the defendant's complaints are seemingly substantial." *State v. DeWise*, 2022 MT 145, ¶ 26, 409 Mont. 284, 513 P.3d 1249. If the district court performs an adequate initial inquiry and determines the defendant's complaints are not seemingly substantial, the court does not need to conduct a hearing to address the complaint. *State v. Johnson*, 2019 MT 34, ¶ 22, 394 Mont. 245, 435 P.3d 64. We clarified in *Johnson* that a defendant must demonstrate one of the following to show good cause for a substitution of counsel request: (1) an actual conflict of interest; (2) an irreconcilable conflict between counsel and the defendant; or (3) a complete breakdown in communication between counsel and the defendant. *Johnson*, ¶ 22.

¶23    Here, Thomas's letters to the court and his explanations during hearings never established that communication between him and Bunitsky were so compromised as to prevent Bunitsky from defending Thomas. Further, there was no claim that there was an actual conflict. Thomas alleged that Bunitsky was not returning his phone calls or meeting with him enough. However, Bunitsky never advised the District Court he was not prepared

10

for trial. "A defendant may not demand substitute counsel simply because he lacks confidence in, or does not approve of, his counsel; he only has the right to substitute counsel in a few instances." *Johnson*, ¶ 14. Because Thomas never articulated anything amounting to a complete breakdown in communication with Bunitsky and merely reiterated his complaints about Bunitsky not talking to him enough, the District Court did not abuse its discretion by not inquiring further into Thomas's complaints. Finally, the court gave Thomas an opportunity to discuss his most recent letter where Thomas did not ask for new counsel but, instead, persisted in his request for a continuance and his insistence on a speedy trial. On this record, we conclude the District Court adequately inquired into Thomas's complaints about his counsel.

¶24 Finally, Thomas argues on appeal that the District Court abused its discretion when it denied his April 4, 2023 motion for new trial by referencing only its crowded docket. We will "affirm the district court when it reaches the right result, even if it reaches the right result for the wrong reason." *City of Kalispell v. Omyer*, 2016 MT 63, ¶ 9, 383 Mont. 19, 368 P.3d 1165 (citations omitted). We have explained that the record does not support that the District Court abused its discretion when it denied Thomas's motion for continuance and request for substitute counsel. Although the court referenced its trial docket in denying Thomas's motion for new trial, it did not abuse its discretion in denying Thomas's motion.

¶25 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶26   Affirmed.


                                        /S/ LAURIE McKINNON


We Concur:


/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON